United States District Court
Middle District of North Carolina

United States of America
vs.                                    Case No: 2:93CR-117-1
Pete Smith

## Objections
### Revocation Hearing

Now comes, Pete Smith, through "pro-se" request this Honorable Court grant defendant objections.

### General Adjustment under supervision

Defendant adjustment to supervision had been satisfactory up to recent events. While in MD/NC, defendant reported as directed, and had no positive urinalysis test.

Defendant went to school got his C.D.L License and defendant has been employed with Waste Industries income of 41,000 a year, as truck driver, since 2006. In August 2007, defendant purchase a house in Raleigh NC.

Then transfer probation to ED/NC, defendant has reported to the probation office as directed and has not tested positive for any illicit substance.

Defendant plead guilty in state court Nov. 13, 2009 to Burning property and conspiracy unlawful Enter a house, with time served.

## objection #1
### Terminate Early supervise probation

**Argument**

See <u>United States v. Barres</u>, 361 f.3d 666 (2nd cir.), (only need one year clean conduct to apply.) On January 13, 2009 defendant petition the court to modification early supervise probation pursuant to 18 U.S.C § 3583(e)(1). Defendant did filed his motion at the three years mark and two months.

Also see U.S.S.G § 1B1.10 Application note (B) states: "<u>Modification Relating to Early Termination</u>". The Law changed while defendant was on supervise probation, that place the defendant at (35) extra months beyond his original sentence and the court have <u>two reason</u> to terminate Early supervise probation, "<u>one</u>", #1 year clean conduct and #2 change in Law.

Relief, defendant request the court terminate sentence pursuant to due process of the 5th Amendment of U.S. constitution. See Attached exhibit A & D

## object #2
### Factors That May Warrant Departure

Retroactivity crack Amendment Guildelines As of November 1, 2007 Amendment 706 of 1B1.10.

**Argument**

Crack Amendment Guildlines Retroactivity Granted as of November 1, 2007. The sentencing commission amended the drug quanity table in 2D1.1 two Level lower. Which moved defendant from Level (31)(168) months to Level 29 (135) months.

Defendant had done a extra (35) months beyond defendant original sentence.

Relief, defendant prays the court terminate sentence pursuant to due process of the 5th Amendment of U.S. constitution. See Exhibit "B"

## objection #3

### Factors That May Warrant Departure

See 18 U.S.C § 3553(a), U.S. V. Harris, 1:08CR-330-1 Honorable Judge Osteen, Jr (Middle District North Carolina) November 2009 and Kimbrough V. U.S, No. 06-6330. (1:1 Ratio crack verse cocaine)

### Argument

1:1 Ratio bring defendant to mandatory 10 years and defendant have done a extra (48) months beyond his original sentence, from (168) months.

Ratio 1:100 in the treatment of crack cocaine and powder cocaine. The Law recently was approved by the house Judiciary committee, and a similar bill has now been introduced in the senate. The house of Representatives is currently considering a new law by which any mention of crack cocaine is deleted from the federal criminal code.

Relief, this court can and in the interest of Justice, this court should, consider this disparate treatment between the two form of the same drug in determining whether to ~~impose a sentence below the advisory~~ terminate defendant sentence pursuant to the 5th Amendment of U.S constitution.

Exhibit "C"

## Objection #4
### Revise supervise probation in 1994.
#### Argument

Any supervise violation, the max sentence is one year, before revised in 1994. Defendant was sentence October 29, 1993 before revised 1994.

Relief, defendant request due process be sentence under the (old) prior supervise vision probation before 1994.

## Objection #5
### B&E conspiracy
#### Argument

Under N.C. General statute 14-2.4 (A) listed as class (I) felony and unlawful enter place with a key. Defendant co-defendant (Tim Hankins) sister (Sherlene Hankins) was the victim. Co-defendant Tim Hankins gave Mr. Smith a house key to move items claim that was his. Which Mr. Smith plead to a class (I) conviction.

Violation is a Grade (B), crime carry a six month sentence and constitute <u>No Violence Crime</u>. Pursuant to U.S.S.G § 7B 1.4 (a), the range of imprisonment applicable upon revocation is (6 to 12) months and category (II).

Relief, defendant relied on the above merits and due process.

## Factor That May Warrant Departure:

- See Docket Sheet Jan. 13, 2009 Modification relating to Early termination 18 U.S.C. § 3583(e)(1), See Application note #4(B)
- See crack cocaine Retroactivity Amendment 706 1B1.10.
- See 18 U.S.C. § 3553(a) and Harris v. U.S 1:08 CR-330-1 Judge Osteen, Jr November 2009 1:1 ratio.

## Policy Statement

The Revocation are not binding on the court. The court must consider the policy statement, but may deviate from them for good reason articulated on the record.

Pursuant to U.S.S.G § 7B1.3(c)(1), the minimum term may be satisfied by a sentence of imprisonment; or a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, according to the schedule in U.S.S.G § 5C1.1(e) for any portion of the minimum term.

Relief, defendant prays the court granted time served or sentence to community confinement pursuant to the 5th Amendment of U.S. Constitution.

## Certificate of Service

I swear I mailed copy to:

U.S. Attorney  
Box 1878  
Greensboro, N.C. 27402

Probation officer  
Jesse Reveas, Jr.

at this 7 day of December 2009

Pete Smith

Exhibit A

In The United States District Court For The Middle District of North Carolina

United States of America,

Plaintiff - Respondent,

- vs -

Pete Smith

Defendent - Petitioner

Case No. 2:93 CR -117-1

FILED JAN 1 3 2009 IN THIS OFFICE Clerk, U.S. District Court Greensboro, N.C. By..........

Ex Parte
Petition for Modification
of Supervised Release

Comes Now, Pete Smith, defendant-petitioner, filing Pro se, with petition for modification of supervised release pursuant to title 18, §3583(e)(1) of the United States codes.

(United States V. Barres, 361 F. 3d. 666. 2nd cir.)





# Federal Criminal Law News

## PRE & POST CONVICTION LAW PUBLICATION

Vol. 24 No. 4      ♦ Federal Criminal Law Center ♦      Special Issue

## CRACK AMENDMENT GUIDELINES:

### RETROACTIVITY GRANTED!

As of November 1, 2007, new rules apply for determining the base offense level in crack cases under §2D1.1 of the advisory guidelines. This memorandum describes the amendments, explains how they work, and alerts you to the anomalies that lurk within them.

**I. Determining the Base Offense Level in Offenses Involving Crack Only**

The Commission amended the Drug Quantity Table in §2D1.1 so that crack quantities triggering the five-and ten-year mandatory minimums are assigned base offense levels two levels lower than before. The base offense levels for these quantities now correspond to guideline ranges that *include* (rather than exceed) the mandatory minimum. The Commission similarly adjusted the drug threshold quantities above, between, and below the mandatory minimum thresholds, with the net result being that for crack offenses, base offense levels across the board are two levels lower than they would have been before the amendment. *See* 72 Fed. Reg. 28, 558, 28, 571-73; U.S.S.G. App. C, Supp. Amend. 706; U.S.S.G. §2D1.1 (2007).

*For example*, under the old guideline, at least 5 grams but less than 20 grams of crack was assigned a base offense level of 26 and a minimum guideline range of 63 to 78 months, which *exceeded* the mandatory minimum of five years by at least three months. Now, the same quantity of crack is assigned to base offense level 24, which corresponds to a minimum advisory guideline range (51 to 63 months) that *includes* the mandatory minimum. Likewise the base offense level assigned to at least 50 grams but less than 150 grams of crack has been adjusted downward to offense level 30, which corresponds to a minimum advisory guideline range of 97 to 121 months. The remaining quantities above, between, and below these quantities have been similarly adjusted downward.

```
This newsletter is available
only by request. If you would
like to be added to or removed
from our mailing list, please
let us know.
```

Here is a reader-friendly comparison of the old and new base offense levels:

| Quantity | BOL under Former § 2D1.1 | BOL under Amended § 2D1.1 |
|---|---|---|
| 4.5 KG or more | 38 | 38 |
| 1.5 KG to < 4.5 KG | 38 | 36 |
| 500 G to < 1.5 KG | 36 | 34 |
| 150 G to < 500 G | 34 | 32 |
| 50 G 50 < 150 G | 32 | 30 |
| 35 G to < 50 G | 30 | 28 |
| 20 G 50 < 35 G | 28 | 26 |
| 5 G to < 20 G | 26 | 24 |
| 4 G to < 5 G | 24 | 22 |
| 3 G to < 4 G | 22 | 20 |
| 2 G to < 3 G | 20 | 18 |
| 1 G to < 2 G | 18 | 16 |
| 500 MG to < 1 G | 16 | 14 |
| 250 MG to < 500 MG | 14 | 12 |
| < 250 MG | 12 | 12 |

For offenses involving crack only, applying the amendment is easy: simply determine the base offense level in the new Drug Quantity Table in § 2D1.1 that corresponds to the quantity of crack your client has been proven responsible for. For quantities between 4.5 KG and 500 MG, the result will be two levels lower than under the old guideline. For quantities outside that range, there is no change in the base offense level.

**ALERT:** By recalibrating the crack cocaine quantity thresholds in this manner, the Commission has created a system in which the ration of crack to powder cocaine varies wildly from one offense level to the next. Even worse, the

FEDERAL CRIMINAL LAW CENTER
2392 North Decatur Road• Decatur, GA 30033
(404) 633-3797 • (404) 633-7980 (Fax) • email: Marcia@MsheinLaw.com • www.MSheinLaw.com

ratio is often more severe for low-level players than it is for bigger dealers. Below are the new ratios:

| LEVEL | RATIO |
|---|---|
| 38 | 33:1 |
| 36 | 33:1 |
| 34 | 30:1 |
| 32 | 33:1 |
| 30 | 70:1 |
| 28 | 57:1 |
| 26 | 25:1 |
| 24 | 80:1 |
| 22 | 75:1 |
| 20 | 67:1 |
| Lower | 50:1 |

As the guidelines are only advisory, if you find yourself looking at one of the higher ratios, argue that the court should not assign a ration any higher than the lowest ratio of the bunch, which is 25 to 1. Ask the judge to make the independent assessment – under 18 U.S.C. § 3553(a) and pursuant to the district court's duty under *Booker* and *Rita* – that an advisory guideline range based on a higher ration reflects "unsound judgment" on the part of the Commission and should not be followed.[1]

## II. Determining Base Offense Level in Offenses Involving Crack and Other Controlled Substances

The Commission also modified the mechanism for determining the base offense level in offenses involving crack and other controlled substances. The mechanism is set forth in new subdivision (D) of Application Note 10. *See* U.S.S.G. §2D1.1 cmt. N.10(D) (2007). Although this determination is a bit more complicated than for offenses involving crack only, it is really not very different from the old method of determining the base offense level for combined sentences, except that there is now a special marijuana equivalency table for the quantity of crack involved, which is derived from the new ratios between crack and marijuana quantities at each offense level. Here's how it works:

First, determine the base offense level for the quantity of crack involved in the case. Find the assigned marijuana equivalency for the crack offense level in the *special* table in that subdivision. *See is.* Cmt. N.10(D)(i)(II). Convert the crack quantity to its marijuana equivalency under the special table, which is reproduced here:

| Base Offense Equivalency | Level Marijuana |
|---|---|
| 38 | 6.7 kg of marijuana per g of cocaine base |
| 36 | 6.7 kg of marijuana per g of cocaine base |
| 34 | 6 kg of marijuana per g of cocaine base |
| 32 | 6.7 kg of marijuana per g of cocaine base |
| 30 | 14 kg of marijuana per g of cocaine base |
| 28 | 11.4 kg of marijuana per g of cocaine base |
| 26 | 5 kg of marijuana per g of cocaine base |
| 24 | 16 kg of marijuana per g of cocaine base |
| 22 | 15 kg of marijuana per g of cocaine base |
| 20 | 13.3 kg of marijuana per g of cocaine base |
| 18 | 10 kg of marijuana per g of cocaine base |
| 16 | 10 kg of marijuana per g of cocaine base |
| 14 | 10 kg of marijuana per g of cocaine base |
| 12 | 10 kg of marijuana per g of cocaine base |

*For example*, 200 G of crack now corresponds to base offense level 32 in the Drug Quantity Table. Under the special marijuana equivalency table above, each gram of crack at level 32 is equivalent to 6.7 KG of marijuana. Thus, 200 G of crack at level 32 is equivalent to 1340 KG of marijuana.

**Second**, determine the combined marijuana equivalency for the other controlled substances involved in the offense by using the regular Drug Equivalency Table (now located in subdivision (E) of Application Note 10) and by following the instructions in subdivision (B) of Note 10. Basically, for each substance, convert each drug to its marijuana equivalent under the Drug Equivalency Table, add the quantities, and find the corresponding offense level for the total quantity in the Drug Quantity Table. *See* U.S.S.G. §2D1.1 cmt. N.10(B).[2]

*For example*, say that the case involving 200 G of crack referred to above also involved 300 G of powder cocaine and 750 G. of methamphetamine. Under the regular Drug Equivalency Table, the cocaine converts to 60 KG of

---

[1] *See Rita v. United States*, 127 S.Ct. 2465, 2468 (2007)(district court may conclude that the guideline sentence fails to reflect §3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in a proper way, or that a different sentence is appropriate "regardless."); *id.* at 2463 (The presumption is not binding, does not place any burden of persuasion or proof on either party, and does not reflect greater deference to the Commission's factfinding than to that of the district court, but merely "reflects the fact that, by the time an appeals court is considering a within-guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case," which is a "double determination").

[2] Note that for certain types of controlled substances, the marijuana equivalencies are "capped" and may require special counting. *See* U.S.S.G. § 2D1.1 cmt. N.10(B).

---

**FEDERAL CRIMINAL LAW CENTER**
2392 North Decatur Road • Decatur, GA 30033
(404) 633-3797 • (404) 633-7980 (Fax) • email: Marcia@MsheinLaw.com • www.MSheinLaw.com • www.federalcriminallawcenter.com

*Exhibit "C"* (handwritten annotation)

Regulation Act of 2005 ("IMBRA"), which requires marriage brokers to keep private information gathered in the course of their business confidential. New offenses at 8 U.S.C. §§1375a(d)(3)(C) and 1375a(d)(5)(B) involve invasions of protected privacy interests and, as such, are referenced to §2H3.1. *Amendment 707, effective November 1, 2007.*

**Commission clarifies grouping rules.** The Commission amended §3D1.1 to clarify application of the grouping rules when a defendant is sentenced on multiple counts contained in different indictments as, for example, when a case is transferred to another district for purposes of sentencing, pursuant to Fed. R. Crim. P. 20(a). The amendment adopts the reasoning of recent case law and counts in the same indictment, but also to multiple counts contained in different indictments when a defendant is sentenced on the indictments simultaneously. *Amendment 706, effective November 1, 2007.*

**Commission simplifies criminal history and minor offense guidelines.** To eliminate misunderstanding about the term "related cases," the Commission eliminated the term from §4A1.2(a)(2) and instead used the terms "single" and "separate" sentences. Prior sentences for conduct that is part of the instant offense are separately addressed at §4A1.2(a)(1) and Application Note 1 of that guideline. Under the new amendment, the initial inquiry will be whether the prior sentences were for offenses that were separated by an intervening arrest (i.e., the defendant was arrested for the first offense prior to committing the second offense). If so, they are to be considered separate sentences, counted separately, and no further inquiry is required. If the prior sentences were for offenses that were not separated by an intervening arrest, the sentences are to be counted as separate sentences unless the sentences (1) were for offenses that were named in the same charging document, or (2) were imposed on the same day. In either of these situations they are treated as a single sentence. The amendment addresses the use of misdemeanor and petty offenses in determining a defendant's criminal history score. Sections 4A1.2(c)(1) and (2) govern whether and when certain misdemeanor and petty offenses are counted. Section 4A1.2(c)(1) lists offenses that are counted only when the prior sentence was a term of probation of at least one year or a term of imprisonment of at least 30 days. Section 4A1.2(c)(2) lists offenses that are never counted toward the defendant's criminal history score. The amendment responds to concerns that (1) some misdemeanor and petty offenses counted under the guidelines involve conduct that is not serious enough to warrant increased punishment upon sentencing for a subsequent offense; (2) the presence of a prior misdemeanor or petty offense in a rare case can affect the sentence in the instant offense in a way that is greatly disproportionate to the seriousness of the prior offense (such as when such a prior offense alone disqualifies a defendant from safety valve eligibility); and (3) jurisdictional differences in defining misdemeanor and petty offenses can result in inconsistent application of criminal history points for substantially similar conduct.



## Favorable Case Law Update – Post Booker

### KIMBROUGH V. UNITED STATES
No. 06-6330
Decided December 10, 2007

*Crack Guideline Is Advisory!*

**The Supreme Court ruled 7-2 that the federal guidelines on sentencing for cocaine violations are advisory only, rejecting a lower court ruling that they are effectively mandatory. Judges must consider the Guideline range for a cocaine violation, the Court said, but may conclude that they are too harsh when considering the disparity between punishment for crack cocaine and cocaine in powder form. Justice Ruth Bader Ginsberg wrote the decision in Kimbrough v. U.S. (06-6330). The ruling validates the view of the U.S. Sentencing Commission that the 100-to-1 crack v. cocaine disparity may exaggerate the seriousness of the crack crime.**

*Syllabus Excerpt:*

Under the statute criminalizing the manufacture and distribution of cocaine, 21 U.S.C. §841, and the relevant Federal Sentencing Guidelines, a drug trafficker dealing in crack cocaine is subject to the same sentence as one dealing in 100 times more powder cocaine. Petitioner Kimbrough pleaded guilty to four offenses: conspiracy to distribute crack and powder; possession with intent to distribute more than 50 grams of crack; possession with intent to distribute powder; and possession of a firearm in furtherance of a drug-trafficking offense. Under the relevant statutes, Kimbrough's plea subjected him to a minimum prison term of 15 years and a maximum of life. The applicable advisory Guidelines range was 228 to 270 months, or 19 to 22.5 years. The District Court found however, that a sentence in this range would have been greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. §3553(a). In making that determination, the court relied in part on its view that Kimbrough's case exemplified the "disproportionate and unjust effect that crack cocaine

FEDERAL CRIMINAL LAW CENTER
2392 North Decatur Road • Decatur, GA 30033
(404) 633-3797 • (404) 633-7980 (Fax) • email: Marcia@MsheinLaw.com • www.MSheinLaw.com • www.federalcriminallawcenter.com

commuter lane, alternative or accelerated inspection system, or other facilitated entry program administered by the federal government for use in entering the United States. In response, the Commission referred the new offense to both §§2D1.1 and 2D1.1(b)(5) and 2D1.11(b)(5) if the defendant is convicted under 21 U.S.C. §864. Also, in response to a new offense in 21 U.S.C. §841(g) (Internet Sales of Date-Rape Drugs), the Commission provided a new two-level enhancement in §2D1.1(b)(9) that is tailored to focus on the more serious conduct covered by the new statute. The Commission also eliminated the maximum base offense level of level 20 for ketamine offenses under 21 U.S.C. §841(g). The amendment also provides a marijuana equivalency in Application Note 10 for ketamine (1 unit of ketamine = 1 gram of marijuana). In addition, the amendment adds to §2D1.1, Application Note 10, a new drug equivalency for 4-butanediol (BD) and gamma butyrolactone (GBL), both of which are included in the definition of date-rape drugs under 21 U.S.C. §841(g). The amendment also addresses the new offense in 21 U.S.C. §860(a) (consecutive sentence for manufacturing or distributing, or possessing with intent to manufacture or distribute, methamphetamine on premises where children are present or reside). *Amendment 704, effective November 1, 2007.*

**Commission adopts guidelines for narco-terrorism and border tunnels.** The USA PATRIOT Reauthorization Act created a new narco-terrorism offense at 21 U.S.C. §960(a.) This new offense prohibits committing a drug offense while intending to provide anything of pecuniary value to any organization that has engaged in terrorist activity. To implement the statute, the Commission created a new guideline at §2D1.14 (Narco-Terrorism). The base offense level is the offense level determined under §2D1.1 for the underlying offense, except that the "mitigating role cap" in §2D1.1(a)(3)(A) and (B) and the two-level "safety valve" reduction do not apply. The guideline also provides a six-level increase if the adjustment in §3A1.4 (Terrorism) does not apply. The Commission also responded to 18 U.S.C. §554 which creates new offenses regarding the construction of border tunnels, by adopting a new guideline at §2X7.1 (Border Tunnels and Subterranean Passages). The new guideline provides that a conviction under 18 U.S.C. §554(a) receives a base offense level of 16. A conviction under 18 U.S.C. §554(c) will receive a four-level increase over the offense level applicable to the underlying smuggling offense. A conviction under 18 U.S.C. §554(b) receives a base offense level of 8. In addition, the Commission amended a number of other guidelines to address other new offenses created by the PATRIOT Reauthorization Act. *Amendment 699, effective November 1, 2007.*

**Commission reduces crack cocaine guidelines by two levels.** The Sentencing Commission continues to urge Congress to change the "100-to-1" quantity ratio between crack and powder cocaine, and will present its recommendations in a Report on May 15, 2007. In the meantime, the Commission decided that the existing guidelines for crack cocaine are two levels higher than necessary to incorporate the existing statutory minimum sentences. Accordingly, the Commission reduced the crack guidelines by two levels. Pursuant to the amendment, 5 grams of cocaine base are assigned a base offense level of 24 (51 to 63 months) at Criminal History Category I, which includes the five-year (60-month) statutory minimum for such offenses. Also, 50 grams of cocaine base are assigned a base offense level of 30 (97 to 121 months) at Criminal History Category I, which includes the ten-year (120-month) statutory minimum for such offenses. Crack cocaine offenses for quantities above and below the mandatory minimum threshold quantities similarly are adjusted downward by two levels. The Commission's prison impact model predicts that this modification to the Drug Quantity Table will affect 69.7 percent of crack cocaine offense sentences under §2D1.1 and will result in a reduction in the estimated average sentence of all crack cocaine offenses from 121 months to 106 months. *Amendment 705, effective November 1, 2007.*

**Commission makes "pretexting" amendment permanent and adopts guidelines for misusing information.** The Commission made permanent the temporary emergency amendment (effective May 1, 2007) at §2H3.1, for the new offense at 18 U.S.C. §1039 which makes it a crime to use a pretext to obtain personal information. In addition, the guideline instructs that if the purpose of the 18 U.S.C. §1039 offense was to facilitate another offense, the guideline applicable to an attempt to commit the other offense should be applied, if the resulting offense level is higher. In addition, the Adam Walsh Child Protection and Safety Act of 2006, added a new offense at 42 U.S.C. §1696 for the improper release of information obtained in fingerprint-based checks for the background check of either foster or adoptive parents or of individuals employed by, or considering employment with, a private or public educational agency. The Act also added a new Class A Misdemeanor offense at 42 U.S.C. §1698 prohibiting the use of a child's fingerprints for any purpose other than providing those fingerprints to the child's parent or legal guardian. This amendment references both offenses to §2H3.1, providing a base offense level of 9 under §2H3.1(a)(1) if the defendant was convicted of violating 42 U.S.C. §1696, and a base offense level of 6 if the defendant was convicted of violating 42 U.S.C. §1698. Finally, this amendment implements the Violence Against Women Act, which included the International Marriage Broker

FEDERAL CRIMINAL LAW CENTER
2392 North Decatur Road • Decatur, GA 30033
(404) 633-3797 • (404) 633-7980 (Fax) • email: Marcia@MSheinLaw.com • www.MSheinLaw.com • www.federalcriminallawcenter.com
Case 2:93-cr-00117-WO Document 234 Filed 12/08/09 Page 10 of 11

(B) <u>Modification Relating to Early Termination.</u>—If the prohibition in subsection (b)(2)(C) relating to time already served precludes a reduction in the term of imprisonment to the extent the court determines otherwise would have been appropriate as a result of the amended guideline range determined under subsection (b)(1), the court may consider any such reduction that it was unable to grant in connection with any motion for early termination of a term of supervised release under 18 U.S.C. § 3583(e)(1). However, the fact that a defendant may have served a longer term of imprisonment than the court determines would have been appropriate in view of the amended guideline range determined under subsection (b)(1) shall not, without more, provide a basis for early termination of supervised release. Rather, the court should take into account the totality of circumstances relevant to a decision to terminate supervised release, including the term of supervised release that would have been appropriate in connection with a sentence under the amended guideline range determined under subsection (b)(1).

<u>Background</u>: Section 3582(c)(2) of Title 18, United States Code, provides: "[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

This policy statement provides guidance and limitations for a court when considering a motion under 18 U.S.C. § 3582(c)(2) and implements 28 U.S.C. § 994(u), which provides: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."

Among the factors considered by the Commission in selecting the amendments included in subsection (c) were the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range under subsection (b)(1).

The listing of an amendment in subsection (c) reflects policy determinations by the Commission that a reduced guideline range is sufficient to achieve the purposes of sentencing and that, in the sound discretion of the court, a reduction in the term of imprisonment may be appropriate for previously sentenced, qualified defendants. The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.

The Commission has not included in this policy statement amendments that generally reduce the maximum of the guideline range by less than six months. This criterion is in accord with the legislative history of 28 U.S.C. § 994(u) (formerly § 994(t)), which states: "It should be noted that the Committee does not expect that the Commission will recommend adjusting existing sentences under the provision when guidelines are simply refined in a way that might cause isolated instances of existing sentences falling above the old guidelines* or when there is only a minor downward adjustment in the guidelines. The Committee does not believe the courts should be burdened with adjustments in these cases." S. Rep. 225, 98th Cong., 1st Sess. 180 (1983).

*<u>So</u> in original. Probably should be "to fall above the amended guidelines".

**Law Office of Marcia G. Shein**

2392 North Decatur Road ♦ Decatur, GA 30033 ♦(404) 633-3797 ♦ Fax: (404) 633-7980